UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CANDY S.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant

**DECISION AND ORDER**

1:24-CV-00702 CDH

## INTRODUCTION

Plaintiff Candy S. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act (the "Act") (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 16; Dkt. 20; Dkt. 27). For the reasons that follow, the Court grants Plaintiff's motion to the extent the matter is remanded for further administrative proceedings and denies the Commissioner's motion.

## BACKGROUND

On December 22, 2016, Plaintiff protectively filed applications for DIB and SSI,

alleging disability beginning December 6, 2016. (Dkt. 8 at 25, 103-04).[1] Her applications were initially denied on April 12, 2017. (*Id.* at 25, 123-34). Plaintiff requested a hearing before an ALJ (*id.* at 137-42, 156-70), which was held on December 21, 2018 (*id.* at 46-81). On March 18, 2019, the ALJ issued an unfavorable decision. (*Id.* at 22-39). Plaintiff sought review from the Appeals Council, which denied her request on June 9, 2020. (*Id.* at 9-13).

Plaintiff brought an action in this Court seeking review of the Commissioner's determination. (*Id.* at 1463). On May 9, 2022, the Hon. William M. Skretny issued a Decision and Order ordering that the case be remanded for further administrative proceedings. (*Id.* at 1463-72).

On remand, the ALJ held hearings on July 10, 2023 (*id.* at 1433-38), November 3, 2023 (*id.*at 1425-1438), and March 11, 2024 (*id.* at 1401-24). During the hearing on November 2, 2023, Plaintiff requested disability insurance benefits for the closed period from December 6, 2016, to January 2, 2022. (*Id.* at 1375, 1428-29).

On March 25, 2024, the ALJ issued an unfavorable decision. (*Id.* at 1374-90). This action followed. (Dkt. 1).

## <u>LEGAL STANDARD</u>

### I. <u>Administrative Determination of Disability</u>

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is

---

[1] In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id.* §§ 404.1509, 416.909, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id.* §§ 404.1520(e), 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1545, 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II. **Review by the Court**

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for disability benefits. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply

to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I. The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. Before proceeding to step one, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2019. (Dkt. 8 at 1378).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity from December 6, 2016, the alleged onset date, through January 1, 2022—that is, during the requested closed period of disability. (*Id.*). The ALJ found at step two that Plaintiff had the severe impairments of obesity, depressive disorder, unspecified anxiety disorder, borderline personality disorder, and substance use dependency. (*Id.*). The ALJ found that Plaintiff's medically determinable impairments of migraine headaches, kidney stones with urinary tract infections, left-sided carpal tunnel syndrome, and back and knee problems were non-severe. (*Id.* at 1378-79).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id.* at 1380-81). At step three, the ALJ specifically discussed the criteria of Listings 12.04, 12.06, and 12.08, as well as the impacts of Plaintiff's obesity in accordance with Social Security Ruling ("SSR") 19-2p. (*Id.* at 1381-82).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the additional limitations that Plaintiff is "restricted to simple, unskilled 1-3 step tasks; no change in job during workday; occasional interaction with the public and co-workers and frequent contact with supervisors." (*Id*. at 1382). The ALJ then proceeded to step four and found that Plaintiff had no past relevant work. (*Id*. at 1388).

The ALJ found at step five that—considering Plaintiff's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id*. at 1388-89). The ALJ ultimately concluded that Plaintiff was not disabled, as defined in the Act, from December 6, 2016, through the date of the ALJ's decision. (*Id*. at 1390).

**II. <u>Remand for Further Administrative Proceedings is Required</u>**

Plaintiff argues that remand of this matter is required because: (1) the ALJ did not follow Judge Skretny's remand order and improperly assessed the impacts of Plaintiff's migraine headaches; (2) the ALJ's physical RFC finding was not based on substantial evidence; and (2) the ALJ improperly relied on his own lay judgment in assessing Plaintiff's physical limitations. (*See* Dkt. 16-1 at 1, 17-23, 27-35).

For the reasons that follow, the Court finds that the ALJ's assessment of Plaintiff's migraine headaches was not appropriately supported by substantial evidence. Having thus concluded, the Court need not and does not reach the other arguments raised by Plaintiff.

The Court begins with the ALJ's step two analysis. The step two severity determination "is intended to increase the efficiency and reliability of the disability evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled." *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 295 (W.D.N.Y. 2016) (alterations and quotation omitted). As noted above, a severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

Only "*de minimis* claims" should be screened out at step two. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). However, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe," *Taylor,* 32 F. Supp. 3d at 265 (quotations omitted). An impairment is non-severe "if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Howard*, 203 F. Supp. 3d at 296.

In this case, the ALJ found at step two that Plaintiff's migraines would "not cause significant work-related limitations . . . but only slight abnormality . . . that would have . . . minimal effect on [her] ability to work[.]" (Dkt. 8 at 1378). The ALJ's basis for this conclusion was that Plaintiff's migraines were "largely . . . a matter of not taking prescription medications[,] . . . having no prescription[s] for this condition[,] and [being] unable to obtain Botox injections given [a] lack of medical insurance to pay" for such treatments. (*Id.* at 1379). The ALJ went on to state that

Plaintiff was "often noted to be within normal limits when presenting for headaches" or using medicine, and that Botox injections controlled her migraines. (*Id.*).

The ALJ's step two analysis ignored and misstated key evidence regarding the severity of Plaintiff's migraine headaches. For example, the ALJ claimed that in August 2018, Plaintiff had "stated that her migraine headaches were controlled with Botox injections[.]" (*Id.* at 1379). As the purported support for this statement, the ALJ cited to pages 12 and 14 of Exhibit B12F. (*Id.*). Exhibit B12F consists of emergency room records dated from August 4, 2017, to January 15, 2018, from Niagara Falls Memorial Medical Center. (*Id.* at 555-621). On the cited pages—which are from January 2018 and not August 2018[2], as claimed by the ALJ—there is no statement by Plaintiff that her migraine headaches are "controlled" by Botox injections. (*See id.* at 566, 568). On page 9 of Exhibit B12F, there is a statement by Plaintiff that Botox injections "help" with her migraines for "about three months," but there is no further qualification of what "help" means. (*Id.* at 563). And at the hearing before the ALJ on December 21, 2018, Plaintiff reported that the Botox injections were not effective in fully alleviating her migraine symptoms and that she was still regularly seeking care in the emergency room. (*Id.* at 1758).

Plaintiff's testimony was supported by the treatment notes of physician's assistant ("PA") Maria Rizzo. On June 6, 2017, PA Rizzo provided Plaintiff a Botox injection, with Plaintiff noting that she had a "meaningful decrease" in migraines

---

2 The relevant records indicate in the footer that they were printed on August 7, 2018, but the medical treatment reflected therein occurred in January 2018. (Dkt. 8 at 566, 568).

since last receiving an injection in 2016. (*Id*. at 1108-09). On January 30, 2018, PA Rizzo provided Plaintiff with another Botox injection. (*Id*. at 1106). During that visit, Plaintiff reported that her migraines had reduced by 75% for about 3 months since her last injection. (*Id*.). On March 13, 2018, Plaintiff again received a Botox injection, noting that she experienced a "meaningful decrease" in headaches and neck pain since her last injection. (*Id*. at 1103). Finally, on May 3, 2018, PA Rizzo reported that Plaintiff received another Botox injection to treat her migraines. (*Id*. at 1100). PA Rizzo noted that Plaintiff was pleased with her response to past Botox injections and reported a 50% reduction in her migraines for about a month since her last injection prior to May 3, 2018. (*Id*.). The Court is unable to discern how the ALJ concluded that a "meaningful" (or even 50-75%) decrease in previously "out of control" migraines causing Plaintiff to wake up nightly with throbbing headaches and a stiff neck (*id*. at 1113) equated to a only "slight abnormalit[y] that would have . . . minimal effect on [her] ability to work[.]" (*id*. at 1378).

The ALJ also claimed that more recent medical records showed that "new prescription medication" had "further controlled and better stabilized [Plaintiff's] migraine headaches." (*Id*. at 1379). But again, the ALJ's conclusions are not supported by the evidence cited. The ALJ cited four pages of Exhibit 33F. (*Id*.). A review of those four pages shows that in August of 2020, Plaintiff reported that she had been prescribed the medication Ubrelvy, which was working well to alleviate her migraines when they started. (Dkt. 9 at 519). However, two months later, in October of 2020, Plaintiff reported that her migraines had been "out of control" and that she

had been instructed to discontinue Ubrelvy and switch to a new medication, Emerge. (*Id*. at 526-27). Then, in December of 2020, Plaintiff reported being on Ubrelvy again, and noted that it had significantly reduced her migraines. (*Id*. at 535). In October of 2021, Plaintiff reported that she was back to experiencing migraines about twice per week and was waiting for an injection of a medication called Aimovig. (*id*. at 593). The ALJ offered no explanation for how these records—which on their face show Plaintiff trying various medications to control her migraine headaches over a long period with only limited success—supported his conclusion that Plaintiff's migraine headaches were non-severe.

The ALJ also stated that Plaintiff had been asked to keep a headache diary and that no such diary appeared in the record. (Dkt. 8 at 1379). But the ALJ failed to mention that Plaintiff had testified that she did keep a migraine diary and that it was at her home. (*Id*. at 70-71). The ALJ asked Plaintiff's counsel if the diary was in the record (*id*. at 71), but made no further effort to follow up on this line of questioning.

The ALJ must support his conclusions with substantial evidence in a way that "build[s] an accurate and logical bridge from the evidence to his conclusion to enable a meaningful review." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) (original alteration omitted and quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). Remand is appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). Here, the ALJ's mischaracterization of the evidence and failure to explain the

significance of the evidence on which he purportedly relied leaves the Court unable to conclude that his step two analysis of Plaintiff's migraine headaches was based on substantial evidence.

This error was not harmless. First, at step three, the ALJ should have considered Plaintiff's migraine headaches in accordance with SSR 19-4p. *See Zakrzewski v. Comm'r of the Soc. Sec. Admin.*, No. 2-25-CV-01435 (FB), 2026 WL 468885, at *6 (E.D.N.Y. Feb. 19, 2026). SSR 19-4p:

> [I]nstructs ALJs evaluating claimants with migraines that the most closely analogous listed impairment to migraines is Listing 11.02 — epilepsy. In assessing whether a migraine disorder meets or equals Listing 11.02, [SSR 19-4p] directs the ALJ to consider a number of factors . . . include[ing] a detailed description from an . . . acceptable medical source of a typical headache event; the associated phenomena that the claimant experiences (such as premonitory symptoms and aura); the frequency of headache events; the claimant's adherence to prescribed treatment; any side effects of treatment; and any limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day.

*Id.* (quotations omitted); *see also Megan S. v. Comm'r of Soc. Sec.*, No. 25-CV-00253-HKS, 2026 WL 1481098, at *5 (W.D.N.Y. May 27, 2026). Rulings such as SSR 19-4p are "binding on all components of the Social Security Administration." *Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019), *as amended* (Apr. 30, 2019). Here, because the ALJ did not find Plaintiff's migraine headaches severe, he did not address the factors identified in SSR 19-4p in his decision.

Second, the ALJ's RFC finding incorporates his inadequately explained conclusion that Plaintiff's migraine headaches are "stable and/or controlled with Botox injections and use of medication." (Dkt. 8 at 1384). And because of this

conclusion, the ALJ failed to incorporate any limitations based on Plaintiff's migraine headaches into his RFC finding.

Remand of this matter is accordingly required. On remand, the ALJ must assess the severity of Plaintiff's migraine headaches in a manner that permits the Court to discern his reasoning and the evidence relied upon in support of thereof.

## III. Remand for Calculation and Payment of Benefits is Not Appropriate

District courts may affirm, reverse, or modify an ALJ's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "Remand for calculation of benefits is appropriate only in cases where the record 'provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.'" *McDonald v. Berryhill*, No. 16-CV-926-FPG, 2017 WL 5712304, at *5 (W.D.N.Y. Nov. 28, 2017) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).

Plaintiff argues that "given the extreme delays in this cause for over 8 years, [her] claim should be remanded for payment of benefits." (Dkt. 16-1 at 23; *see id.* at 35-36). The Court understands Plaintiff's frustration regarding the length of these proceedings. But "the Court of Appeals has held that 'absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits.'" *Casanova v. Saul*, No. 3:19-CV-00886-TOF, 2020 WL 4731352, at *6 (D. Conn. Aug. 14, 2020) (quoting *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996)).

Further, the Court is unconvinced that the record provides conclusive proof of disability. *See Kimberly B. v. Saul*, No. 5:19-CV-185, 2020 WL 13828580, at *13 (D.

Vt. Nov. 9, 2020) ("Since the court cannot say with certainty that a correct weighing of the opinion evidence and evaluation of subjective symptoms could lead only to the conclusion that Plaintiff is disabled, remand for further administrative proceedings is appropriate."). Here, Plaintiff herself argues that there was an evidentiary gap in the record regarding Plaintiff's physical limitations that the ALJ failed to fill. (*See* Dkt. 16-1 at 31). While the Court has not reached this argument in light of its conclusions above, the Court does not find that remand in this case could serve no purpose in providing the ALJ an opportunity to consider this issue, as well as to appropriately assess the severity of Plaintiff's migraine headaches.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 20) is denied, and Plaintiff's motion for judgment on the pleadings (Dkt. 16) is granted to the extent that the matter is remanded for further administrative proceedings. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Colleen D. Holland
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: Rochester, New York
September 29, 2026